[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Federal Home Loan Mortgage Corporation ("FHLMC") brings this action to foreclose a mortgage from the defendant Michael Santoro and to obtain a money judgment against his brother, the defendant Julius Santoro, a co-signer of the promissory note in question. The plaintiff's right to foreclose has not been contested. However, Julius Santoro denies his liability on the note and has interposed two special defenses. In the first special defense, Julius Santoro (the "defendant") contends that he signed the note as an accommodation party and that his liability should be discharged pursuant to General Statutes § 42a-3-605 because the plaintiff impaired the value of the collateral by not promptly foreclosing the mortgage. In the second special defense, the defendant contends that his liability should be discharged because the originator of the loan, Centerbank, prejudiced the defendant's rights by permitting a second mortgage to be filed against the mortgaged property. Trial was held on the plaintiff's claim against Julius Santoro and his defenses to that claim.
On October 21, 1988 Michael Santoro purchased real estate known as 55 Hinsdale Avenue in Waterbury (the "Property") for a purchase price of $133,000. The defendant Julius Santoro cosigned CT Page 4180-AH the mortgage note for $98,000 payable to Centerbank, but did not acquire any ownership interest in the Property. The mortgage was later assigned to the plaintiff FHLMC. On January 17, 1992 Michael Santoro died. On February 13, 1992 the defendant Theresa Sestilli was appointed executrix of the estate of Michael Santoro by the Waterbury Probate Court. Also in February, 1992 Julius Santoro called a representative of Centerbank Mortgage Company, which was servicing the mortgage for the FHLMC, to determine the balance due on the note and the amount of the monthly payment. He explained to the mortgage company's representative that he could not afford to pay the full amount of the monthly mortgage payment and he offered to pay a lesser amount. This offer was not accepted and the defendant then retained an attorney, James McCormack.
McCormack wrote to the bank twice, once late in February, the second time in early March. On behalf of the defendant, McCormack asked the mortgage company to "expeditiously bring a foreclosure action" because the defendant would not be able to make the monthly payments.
The mortgage company's representative, however, was also having discussions with the executrix of Michael Santoro's estate, who asked the bank for some time to see if she could sell certain other assets of the estate in order to pay the mortgage. She was unable to do so, however, and by letter dated May 6, 1992, the mortgage company sent notice of default under the mortgage. No payments had been made since January, 1992. In October, 1992, this action was brought seeking foreclosure of the mortgage and judgment against Julius Santoro.
There is no dispute between the parties that the defendant Julius Santoro is an "accommodation party" on the mortgage note, within the meaning of General Statutes § 42a-3-419. He signed the note and incurred liability on it without being a direct beneficiary of the loan proceeds.
Under General Statutes § 42a-3-605, an accommodation party on a secured instrument is discharged from liability if the holder of the instrument impairs the value of the collateral. The discharge is limited, however, to the extent of the impairment. The defendant contends that the FHLMC impaired the value of its collateral, which is the first mortgage on the Property, by failing to foreclose promptly and as a result of CT Page 4180-AI falling real estate values, the value of the collateral, i.e., the Property was impaired. The defendant presented the testimony of a real estate appraiser who testified that the fair market value of the property in March, 1992, when the defendant asked that foreclosure proceedings be initiated, was $105,000 to $110,000, but that as of the date of trial, February 16, 1995, the fair market value of the Property was $70,000 to $75,000.
The defendant has the burden of proving his special defense of impairment. General Statutes § 42a-3-605(e). Although subsection (g) of the same statute sets forth some examples of impairment of the value of collateral, paragraph 1 of the Comment to Section 42a-3-605 points out that the section is not limited to the stated examples. Negligent inaction can be found to constitute impairment of collateral. 6A Anderson, Uniform Commercial Code (3d Ed. 1993) § 3-306:43.
To "impair" collateral means to injure it or allow it to deteriorate in value. Hurt v. Citizens Trust Co., 128 Ga. App. 224,296 S.E.2d 349, 12 UCCRS 714, 716 (1973). Section 42a-3-605, formerly General Statutes § 42a-3-606, is an equitable doctrine designed to protect a surety's right of subrogation. Bank Southv. Jones, 185 Ga. App. 125, 364 S.E.2d 281, 5 UCCRS 2d 644, 648 (1987). A surety such as an accommodation party, one who pays or satisfies the obligation of a principal obligor, is subrogated to the rights of the creditor against the collateral which secures that obligation. Thus, it is only fair that impairment of the collateral by the creditor operates to relieve the surety to the extent of the impairment.
Neither the parties nor the court found any cases, in Connecticut or elsewhere, where a creditor was found to have impaired the value of collateral by delaying the filing of a mortgage foreclosure action. In the absence of any specific cases, the conduct of the FHLMC here must be measured against the general standard of reasonable care. The test by which the creditor's action or inaction is to be measured is whether the creditor exercised reasonable care under all the relevant circumstances. Bank South v. Jones, supra; Bank of Ripley v.Sadler, 611 S.W.2d 454, 39 UCCRS 544, 549 (1984); BeneficialFinance Co. of Norman v. Marshall, 18 UCCRS 1014 (1976).
In this case, the monthly mortgage installments were paid through and including January, 1992. Michael Santoro died on January 17, 1992. The executrix of the estate was appointed by CT Page 4180-AJ the Probate Court in mid February. In early March the attorney for the defendant wrote and asked for the initiation of the foreclosure action. The defendant's first claim is that the FHLMC impaired the value of the collateral by not initiating foreclosure in March, 1992.
The court does not find that the failure of the FHLMC to bring this foreclosure action in March, 1992 was a breach of the standard of reasonable care under the circumstances. In early March, 1992, the mortgage was in arrears for only one month, the month of February. A representative of the mortgage company, testified that it is not a general banking practice to begin foreclosure when the mortgage is only one month in arrears. Moreover, the same representative testified, when the default arises as a result of the death of someone, the mortgage company attempts to work with the surviving parties. In this case, the executrix told the mortgage company that she wanted to try to sell other assets of the estate to see if the mortgage could be paid. The mortgage company informed the FHLMC of all these developments. The FHLMC did not act unreasonably in waiting until early May to declare the mortgage in default and then proceeded with foreclosure.
The defendant also argues that the FHLMC impaired the value of the collateral by not bringing the foreclosure until October, 1992, seven months after the defendant asked in March, 1992 that foreclosure be initiated. From a review of the foreclosure complaint the court infers that foreclosure was not brought until October, 1992 because of the effort of counsel for the FHLMC in determining the identity of all the heirs of Michael Santoro. Nineteen individual heirs, both in Connecticut and out of state, were named and served as defendants in this foreclosure action. This effort was entirely unnecessary, however. Michael Santoro left a will which was filed with the Probate Court in January, 1992. He directed in his will that his real estate be sold and the proceeds used to pay any debts. The remaining balance of the proceeds would be part of the residuary estate, which he specifically devised to the executrix, Theresa Sestilli. The nineteen other heirs received bequests of personal property in the will, but had no claim to the Property. Only after counsel for the defendant pointed out these errors did counsel for the FHLMC withdraw the action as to the nineteen heirs. The withdrawal was filed on December 3, 1992. It was not until April 15, 1993, over four months later, CT Page 4180-AK that counsel for the FHLMC filed any motions in this action whatsoever in an effort to move it forward.
On April 21, 1993 the FHLMC obtained a default against Theresa Sestilli, the executrix of the estate of Michael Santoro, for failure to appear in this matter. On June 30, 1993 all of the remaining defendants, except Julius Santoro, were defaulted for failure to plead. In June, 1993, Julius Santoro filed an answer with a special defense. Counsel for the FHLMC did not file a reply to the special defense, but waited until October, 1993, an additional four months, to file an ill conceived motion to strike the special defense, which was denied in November, 1993. In December, 1993 counsel for the FHLMC filed a court trial list claim. While the case awaited trial, however, in September, 1994 another attorney from the same law firm which represented the FHLMC throughout these proceedings filed a motion to cite in all the same nineteen heirs which had originally been sued and later had had this action withdrawn against them. The defendant Julius Santoro's objection to the motion, based on the lack of necessity in joining these parties as defendants, was sustained by the court in September, 1994.
The court finds that the FHLMC, through its attorneys, impaired the collateral by failing to exercise reasonable care in pressing this foreclosure action to judgment in two respects. First, counsel for the FHLMC not once but twice sought erroneously to make the nineteen heirs of Michael Santoro defendants in this action, wasting months of time in this ill-conceived effort. These heirs were never necessary parties to the foreclosure action. Secondly, counsel for the FHLMC let this action languish for months at a time without filing the necessary motions to take this action to judgment. The most egregious delay is that the FHLMC's counsel apparently has never realized that it has had the ability to obtain a judgment of foreclosure of the mortgage at all times since June 30, 1993, the date as of which all parties except Julius Santoro were defaulted. The defenses of Julius Santoro are not defenses to the foreclosure of the mortgage, because Julius Santoro does not claim any interest in the Property. The foreclosure is not contested. The contest is whether the FHLMC can recover a money or deficiency judgment against Julius Santoro. At all times since June 30, 1993, the plaintiff FHLMC could have filed a motion for judgment of foreclosure of its mortgage on the Property, but it failed to do so. The FHLMC could have obtained ownership of the Property by the fall of 1993 if its counsel had proceeded reasonably and diligently. CT Page 4180-AL
To sustain his burden of proof with respect to impairment, the defendant bears the burden of proving the extent of the impairment, for § 42a-3-605 provides for a pro tanto discharge based on the amount of the reduction in the value of the collateral. The defendant's appraiser testified to the fair market value of the Property as of only two dates, March, 1992 and February 16, 1995, the date of trial. The appraiser did not testify to the value of the property in June, 1993 or September, 1993 or any other date. The defendant argues in his brief that the Property lost value at the rate of between $857 and $1,000 per month between 1992 and 1994. This contention is based on the difference in value between March 1992 and February, 1995, $30,000 or $35,000, allocated evenly over the 35-month period.
Although the appraiser did testify that property values generally dropped "steadily" from February 1992 until the present, the court is not persuaded that this testimony is sufficient to support the mathematical calculations made by counsel for the defendant for two reasons. First, the court closely observed the witness' demeanor when counsel posed this question; the witness evidenced reluctance to assent to counsel's concept of a "steady" decline although he did ultimately agree. Secondly, the basis for the appraiser's values in March, 1992 and February, 1995 was comparable sales occurring as of those dates. An accurate and consistent basis for finding values at other points in time should be comparable sales at those times, but the defendant has not offered such evidence. Therefore, the court finds that the defendant failed to sustain his burden of proof with respect to the value of the impairment of the Property. The court finds for the plaintiff FHLMC on the first special defense. Because the defendant failed to sustain his burden of proof, it is not necessary for the court to reach the FHLMC's contention that the defendant waived any discharge as provided in General Statutes § 42a-3-605(i).
Although the defendant presented evidence at trial in support of his second special defense alleging that Centerbank permitted a second mortgage to be filed against the Property, that defense was not briefed in the defendant's post-trial memorandum of law. When a party fails to brief his or her affirmative claim, the trial court can properly consider it abandoned. Collins v. Goldberg, 28 Conn. App. 733, 738 (1992). Moreover, the court is unaware of any basis in the law for the defendant's claim that Centerbank, a first mortgagee, owed a CT Page 4180-AM duty to the defendant, an accommodation party on the mortgage note, to either disclose that the borrower was encumbering the mortgaged property with a second mortgage or to prohibit such a second mortgage. The court finds for the plaintiff on the second special defense.
The court has found for the plaintiff on both special defenses. The plaintiff should proceed to judgment by filing a motion for judgment of foreclosure, which should be heard on the regular foreclosure calendar.
VERTEFEUILLE, J. CT Page 4186